# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

IN RE:                                          )
                                                )    Case No. 12-35230 ABC
MORREALE HOTELS, LLC                            )
EIN: 20-4442439                                 )    Chapter 11
                                                )
    Debtor.                   )

## DEBTOR'S AMENDED* EMERGENCY MOTION TO COMPEL 2011-SIP-1 CRE/CADC VENTURE, LLC TO RESPOND TO DEBTOR'S FIRST SET OF WRITTEN DISCOVERY TO 2011-SIP-1 CRE/CADC VENTURE, LLC

Morreale Hotels, LLC, the Debtor and Debtor-in-Possession herein, by and through its undersigned counsel, respectfully requests a forthwith order compelling 2011-SIP-1 CRE/CADC Venture, LLC ("CRE") to fully respond to Debtor's First Set of Written Discovery to CRE, and in support states as follows:

1.    The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on December 14, 2012.

2.    The Debtor continues in possession of its property and is operating and managing its business, as debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

3.    There are currently three pending matters set for an evidentiary hearing on September 16, 17 and 18, 2013. Those matters include a motion to dismiss filed by the U.S. Trustee, a motion for relief from stay filed by CRE and the Debtor's proposed plan of reorganization (the "Contested Matters").

4.    In contemplation of these Contested Matters, the Court established various deadlines for discovery, disclosure of expert reports, ballots to accept or reject the plan, and objections to confirmation. The Court ordered that discovery shall be completed by September 9, 2013, with the time for responses to written discovery reduced to fourteen days ("Discovery Deadline"). The Court also ordered the parties to exchange pre-marked exhibits and exchange and file exhibit and witness list with the Court by September 11, 2013 (the "Witness and Exhibit List Deadline"). See Minutes of Proceeding from July 15, 2013 (Docket No. 174) and July 24, 2013 (Docket No. 178).

*The Motion is being amended to update paragraph 7 and to attach Exhibits A and B which were inadvertently not filed with the original Motion.

5.      On August 20, 2013, the Debtor propounded Debtor's First Set of Written Discovery to 2011-SIP-1 CRE/CADC Venture, LLC (the "Discovery"), including a request for production of documents, interrogatories, and a request for admissions.  Responses to the Discovery were due within fourteen days, on or before September 3, 2013.

6.      On September 3, 2013, counsel for CRE emailed counsel for the Debtor a Word document purporting to be CRE's responses to the Debtor's Discovery (the "Response").  A copy of the Response to the Discovery is attached hereto as Exhibit A.  No documents were produced with the Response and the Response is signed by counsel for CRE, not a representative of CRE.  Counsel for CRE did note in his email, "We are loading document files onto a disc that we will forward as soon as possible.  I will also forward a declaration from the client supporting the responses."  A copy of the email from CRE's counsel is attached hereto as Exhibit B.

7.      On the morning of September 4, 2013, undersigned counsel responded to CRE's email, including a request for the anticipated date that CRE would be producing documents and providing the declaration, as well as stating the Debtor's position that certain of CRE's objections to the Discovery were inaccurate and/or lacked any basis.  Undersigned counsel advised CRE's counsel of the Debtor's intent to file a motion to compel.  On the evening of September 4, 2013, CRE's counsel provided the declaration of John Calder and responded that documents are being placed in the mail the evening of September 4, 2013.  Counsel for CRE affirmed CRE's objections and stated CRE does not intend to supplement its Response.

8.      CRE's incomplete Response does not comport with this Court's Minute Orders or the Federal Rules of Civil Procedure and is prejudicial to the Debtor as the Debtor is preparing to meet the Discovery Deadline and the Witness and Exhibit List Deadline, as well as preparing for the two and one-half day hearing commencing on September 16, 2013.  Without the information requested in the Debtor's Discovery, the Debtor is unable to effectively prepare for the hearing.

## CRE'S OBJECTIONS TO DEBTOR'S
## REQUESTS FOR PRODUCTION OF DOCUMENTS

9.      In its Response to the Discovery, CRE filed numerous objections.  Several of CRE's objections to the Debtor's Discovery are based on the inaccurate statement that the Debtor has not timely objected to CRE's claim or standing and thus the Discovery is not relevant and is time barred.  For example, the Debtor requested "Produce all written or recorded Communications and correspondence, including letters and emails, between FirstTier and CRE,

whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan." (Request for Production No. 1). CRE objected to this request stating, "Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Specifically, this request seeks communications that are wholly unrelated to Lender's Motion for Relief From Stay or Debtor's Plan Confirmation, as the Communications are only relevant to Lender's acquisition of the notes. Debtor has not asserted a challenge or an objection to Lender's ownership of the notes, or Lender's right to enforce the notes, and Debtor is now time barred from raising such objections." CRE's statements in its Response are inaccurate. There is no rule, statute or Court order establishing a deadline to file an objection to CRE's proof of claim or to otherwise challenge CRE's ownership or rights under the note, and certainly no deadline that has passed. The Debtor's Plan provides at paragraph 9.5 that "All Claim objections and Avoidance Actions in the case must be filed no later than 60 days following the Effective Date." Additionally, the Disclosure Statement reserves rights including, "In accordance with 11 U.S.C. § 1123(b)(3), the Debtor reserves the right to pursue any causes of action it may have against the City and County of Denver, the FDIC, and CRE (or its successors or assigns). Such claims include the claims currently asserted in the legal and administrative proceedings with the City and County of Denver and Denver Office of Economic Development, proof of claim objections, and any other claims that will be researched by the Debtor." Fourth Amended Disclosure Statement, Part V. The timeliness of any claim objection or complaint against CRE appears to be the primary or sole basis for CRE's objection to the Debtor's requests for production of documents nos. 1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18, as well as the response to interrogatory nos. 12, 13, 14, 15, 16, and 17. Such an inaccurate statement of fact and conclusion of law is not a proper basis to object to the Debtor's Discovery.

10.    CRE objects to several of the Debtor's requests on the basis that the information requested is subject to the attorney-client privilege or work-product doctrine. For example, the Debtor requested CRE to, "Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the SBA and CRE, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan." Request for Production No. 3. The Debtor believes this information is relevant because of the interrelationship between the

SBA and CRE loans and potentially terms in each of their agreements that affect the Debtor, the SBA and/or CRE's rights and remedies. CRE objected to the request stating, "Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender will produce all relevant, nonprivileged communication between it and SBA since Debtor's bankruptcy petition was filed." Similarly, the Debtor asked for the same type of information concerning Communications between CRE and the Office of the U.S. Trustee. Request for Production No. 4. CRE responded, "Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender states that it has not had any direct Communications with the United States Trustee during the time period listed. Lender's attorneys have communicated with the United States Trustee, but said Communications constitute attorney work-product and therefore are not discoverable." CRE provided the same response in connection with the Debtor's request for Communications with the City. Request for Production of Documents No. 5. No privilege log has been provided and no basis or information is provided that would enable the Debtor to assess the privilege claims. Throughout this case, CRE, the U.S. Trustee and the City and County of Denver have joined forces to oppose the Debtor's reorganization at every turn, using the hearsay of each other to allege inaccurate, incomplete and damaging statements against the Debtor. The U.S. Trustee and CRE have alleged bad faith and mismanagement on the part of the Debtor. Certain of Debtor's Discovery is aimed at defending these allegations and shedding light on the true dynamic of the case. Such Communications may also assist the Debtor in defending its Plan, including by showing that the Chapter 11 Plan is in the best interest of all creditors of the Estate and that the Plan complies with Chapter 11. Similarly, in response to Request for Production Nos. 37 and 38, CRE responds, "Lender will produce all relevant, unprivileged collateral documents kept in its loan file," however no privilege log has been provided and no basis or information is provided that would enable the Debtor to assess the privilege claims.

11. In request for production no. 22, the Debtor requested CRE "Produce all internal Communications at CRE, including between its employees, board of directors or any committees, or parent companies, which relate to Morreale Hotels, LLC and/or Jesse Morreale." Request for Production of Documents No. 22. CRE responded, "Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Debtor asks for any communications related to itself or Jesse Morreale and does not specify that these

communications be limited in time or subject matter." While CRE is correct that there is no specific time restriction, CRE has only been involved with the Debtor and the Debtor's loans since 2010 at the earliest (because FirstTier Bank was closed and placed into receivership by the FDIC on January 28, 2011) and therefore this objection appears to be made in bad faith. Requesting such documents over a time period of less than three years is not overbroad or unduly burdensome and the information is relevant. While CRE is correct that the subject matter is not specified, the only subject matter the Debtor's Discovery could possibly refer to is that of the loans associated with the Broadway Property and Colfax Property. CRE's objection is made in bad faith. Debtor asserts the same reasons compel the production of documents in response to Debtor's Request for Production of Documents No. 33.

12.     Throughout the Responses, CRE makes relevancy objections. Specifically, Debtor requested CRE, "Produce all Documents or Communications between CRE and any professional or expert retained by CRE, including, but not limited to individuals at AEI Consultants including John Snyder and Jason Grubb, and individuals at CBRE including Christopher Baker." Request for Production No. 32. CRE responded, "Lender will produce all relevant communications with any professional or expert retained by Lender related to this dispute." The wording of the response indicates CRE is producing some, but not all, of the requested documents without stating any specific basis or privilege claim.   The Debtor also disagrees with CRE's relevancy objections in requests for production nos. 34, 35, and 36.

13.     Assuming CRE produces as it states it will in its Response, the Debtor does not believe the Motion to Compel applies to requests for production nos. 6, 7, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 33. For these requests, the Debtor in good faith either accepts CRE's response or is not pursing in this Motion to Compel.

## CRE'S OBJECTIONS TO DEBTOR'S INTERROGATORIES

14.     In Debtor's Interrogatories 2 and 3, Debtor seeks information regarding any person or entity that has expressed a desire or intention to purchase or otherwise take control of the Debtor's properties at any foreclosure or sale or to take over the Broadway Loan and/or Colfax Loan. CRE objected to the interrogatories as irrelevant, vague, overly broad and burdensome. Such information may be relevant to the current marketability and value of the Broadway Property and Colfax Property. As is noted above, CRE has only been involved with the Debtor and the Debtor's loans since 2010 at the earliest (because FirstTier Bank was closed

and placed into receivership by the FDIC on January 28, 2011) and therefore the request for information over a three year period is not overly broad or burdensome.

15.     In Debtor's Interrogatory No. 4, the Debtor sought information regarding CRE's intentions with respect to the properties if it is granted relief from stay.   CRE objected on relevancy grounds.   The information is relevant in that it could relate to the value of the properties, the Debtors' liquidation analysis, the fair and equitable test, and best interest of creditors test.

16.     In Debtor's Interrogatory Nos. 5, 7, 8, 9, 10, and 11, the Debtor sought information regarding loss-mitigation options and other potential loan resolutions, as well as a description of any consumer, customer, and  regulatory complaints, inquiries, and investigations regarding CRE.  CRE objected primarily on relevancy grounds.  The requested information may be relevant with respect to the Debtor's potential causes of action.  As is noted above, the Disclosure Statement reserves rights including, "In accordance with 11 U.S.C. § 1123(b)(3), the Debtor reserves the right to pursue any causes of action it may have against the City and County of Denver, the FDIC, and CRE (or its successors or assigns).  Such claims include the claims currently asserted in the legal and administrative proceedings with the City and County of Denver and Denver Office of Economic Development, proof of claim objections, and any other claims that will be researched by the Debtor."  Fourth Amended Disclosure Statement, Part V. Any claims against CRE may be relevant to the feasibility of the Debtor's Plan and assist the Debtor in defending against the allegations that the Debtor has acted in bad faith or mismanaged its affairs.

17.     With respect to Interrogatory Nos. 12, 13, 14, 15, 16, and 17, CRE objects to the request on the basis that the inquiry is time barred.  As is set forth above in more detail, the deadline to object to CRE's proof of claim or to otherwise challenge its claim has not expired.

18.     The Debtor's Motion to Compel does not relate to Interrogatory Nos. 6, 18, 19, 20, 21, 22, 23, 24, or 25.  For these interrogatories, the Debtor in good faith either accepts CRE's response or is not pursing in this Motion to Compel.

## OBJECTIONS GENERALLY, REQUEST FOR ATTORNEY FEES, AND REQUEST FOR SANCTIONS

19.     The Debtor's Discovery is aimed at nonprivileged information relevant to the Debtor's proposed Plan and the Debtor's defenses to the U.S. Trustee's motion to dismiss and CRE's motion for relief from stay.

20.     If an impaired class votes against acceptance of a Chapter 11 debtor's plan, a debtor must demonstrate that the plan does not discriminate unfairly and is fair and equitable. 11 U.S.C. § 1129(b)(1).  The information requested will assist the Debtor in carrying its burden of proof on its Plan of Reorganization.  The Court should consider the arrangements between CRE, the SBA and the FDIC to determine the appropriate outcome of this case.  Although the Debtor must pay CRE's allowed claim, an equitable factor in determining confirmation is the difference between the amount CRE paid for the Loan and the amount it is due to receive under the Plan.

21.     Throughout this case, the U.S. Trustee, the City and County of Denver and CRE have made serious, negative, and inaccurate allegations against the Debtor regarding its management, its affairs and its ability to confirm its Plan.  Now that it is time for the Debtor to defend those allegations, the City and CRE are claiming the information is not relevant.  CRE's Response to the Debtor's Discovery, and delayed and untimely production of documents, is extremely prejudicial to the Debtor in its preparation for filing a list of witnesses and exhibits on September 11, and in its preparation for the hearing scheduled for September 16-18, 2013.

22.     Fed. R. Civ. P. 37 governs motions to compel discovery.  A motion to compel is appropriate if a party fails to answer an interrogatory or fails to respond to a request for production of documents. Fed. R. Civ. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

23.     Pursuant to Fed. R. Civ. P. 37(a)(5) and (d)(3), the Debtor requests the Court require CRE to pay the Debtor's reasonable expenses incurred in making this Motion to Compel, including the Debtor's attorney's fees.

24.     Additionally, pursuant to Fed. R. Civ. P. 37(b), the Debtor requests the Court sanction CRE for not timely producing the documents requested under Fed. R. Civ. P. 34.  This Court ordered discovery responses to be provided within fourteen days.  CRE provided written improper responses to the Debtor's Discovery on the fourteenth day, but has not yet produced any documents.  CRE did not request an extension of this deadline or offer any date by which the documents would be produced.  With deadlines and a hearing date quickly approaching, such

sanctions should include staying further proceedings until the order is obeyed (Fed. R. Civ. P. 37(b)(2)(A)(iv)), disallowing CRE from offering any evidence at the hearing, dismissing or denying CRE's motion for relief from stay and any Plan objection (Fed. R. Civ. P. 37(b)(2)(A)(v) and (vi)) and treating CRE's failure to properly respond to the Debtor's Discovery as contempt of court (Fed. R. Civ. P. 37(b)(2)(A)(vii)).

25.     Debtor's counsel conferred with counsel for CRE, but was unable to resolve any of CRE's objections to the Discovery.

26.     For the reasons set forth above, this Court should compel CRE to fully respond to Debtor's Discovery on or before Friday, September 6, 2013, and Order sanctions as outlined above.


WHEREFORE, the Debtor prays that the Court make and enter an Order compelling 2011-SIP-1 CRE/CADC Venture, LLC to fully respond to Debtor's First Set of Written Discovery to CRE; issuing sanctions against 2011-SIP-1 CRE/CADC Venture, LLC for failing to timely and completely respond to the Debtor's Discovery; and for such further and additional relief as to the Court may appear proper.


Dated:  September 5, 2013                    Respectfully submitted,

                                             By: _Leigh Flanagan_
                                             Lee M. Kutner, #10966
                                             Leigh A. Flanagan, #34916
                                             KUTNER BRINEN GARBER, P.C.
                                             303 E. 17th Avenue, Suite 500
                                             Denver, CO  80203
                                             Telephone:  (303) 832-2400
                                             Facsimile:  (303) 832-1510
                                             Email: lmk@kutnerlaw.com
                                             Email: laf@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 5, 2013, I served by prepaid first class mail a copy of the foregoing **DEBTOR'S AMENDED EMERGENCY MOTION TO COMPEL 2011-SIP-1 CRE/CADC VENTURE, LLC TO RESPOND TO DEBTOR'S FIRST SET OF WRITTEN DISCOVERY TO 2011-SIP-1 CRE/CADC VENTURE, LLC** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Leo Weiss, Esq.
United States Trustee
999 18th Street
Suite 1551
Denver, CO 80202

Eric E. Johnson, Esq.
Craig Schuenemann, Esq.
Sarah E. April, Esq.
Bryan Cave HRO
1700 Lincoln Street
Suite 4100
Denver, CO 80203

Vicky Martina

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MORREALE HOTELS, LLC, | ) | Case No. 12-35230-ABC |
| EIN: 20-4442439 | ) | |
| | ) | |
| DEBTOR. | ) | Chapter 11 |
| | ) | |
| | ) | |

---

## 2011-SIP-1 CRE/CADC VENTURE, LLC'S

## RESPONSES TO DEBTOR'S FIRST SET OF WRITTEN DISCOVERY

---

Pursuant to Fed. R. Civ. P. 26, 33, 34 and 36, as incorporated by the Federal Rules of Bankruptcy Procedure, 2011-SIP-1 CRE/CADC Venture, LLC ("Lender") hereby responds to Morreale Hotels, LLC's ("Debtor") First Set of Written Discovery.

## GENERAL OBJECTIONS

1.      Lender objects to the Interrogatories, Requests for Production of Documents, and Requests for Admission (collectively, "Discovery Requests") to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, and Lender will not provide such information.  Any inadvertent provision of such information is not intended to waive any such protection, nor is such provision to be deemed a waiver of such protection as to any other information.

2.      Lender objects to the Discovery Requests to the extent that they are vague, ambiguous, overbroad and to the extent that the discovery sought is unreasonably cumulative, duplicative, disproportionate and/or unduly burdensome.

3.      Lender objects to the Discovery Requests to the extent that they seek to impose upon Lender's obligations that are not imposed by or are inconsistent with the Federal Rules of Civil Procedure and case law pertaining to such Rules.

4.      Lender objects to the Discovery Requests to the extent that they seek information which is not relevant to the issues involved in this action, or not reasonably calculated to lead to the discovery of admissible evidence.  Lender specifically objects to

1657355.4

**EXHIBIT A**

the Discovery Requests to the extent that they seek information that is not relevant to the claim or defense of any party.  Lender will produce information only to the extent that it is relevant to the claim or defense of any party to this case and/or calculated to lead to the discovery of admissible evidence.

5.      Lender objects to the Discovery Requests to the extent that they call for information that is not within the possession, custody, or control of Lender.

6.      In providing responses to the Discovery Requests, Lender does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

      a.      all objections at any stage of this action as to competency, relevancy, materiality, and admissibility of the Discovery Requests, the responses thereto, and their subject matter;

      b.      all objections at any stage of this action as to the vagueness, ambiguity, or other infirmity in the form of the Discovery Requests;

      c.      all objections based on the undue burden imposed by the Discovery Requests;

      d.      all rights to object on any ground to the use of any of the Discovery Requests, the responses thereto, or their subject matter, in any other proceeding;

      e.      all rights to supplement, review, correct, add to or clarify any of the responses to the Discovery Requests; and

      f.      any and all privileges and/or rights.

7.      The objections set forth above are hereby incorporated in each response set forth below, and shall be deemed to be continuing irrespective of whether or not they are expressly referenced in a response to any Request.

8.      Lender's objection to any Discovery Request should not necessarily be construed to mean that responsive information exists.

9.      The production of information that is subject to any objection does not, and is not intended to, constitute a waiver of any such objection as to any information not produced.

10.      Lender's answer to any Discovery Request shall not limit Lender's proof at trial.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce all written or recorded Communications and correspondence, including letters and emails, between FirstTier and CRE, whether sent to or from You, for

1657355.4

the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Specifically, this request seeks communications that are wholly unrelated to Lender's Motion for Relief From Stay or Debtor's Plan Confirmation, as the Communications are only relevant to Lender's acquisition of the notes. Debtor has not asserted a challenge or an objection to Lender's ownership of the notes, or Lender's right to enforce the notes, and Debtor is now time barred from raising such objections.*

2.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the FDIC and CRE, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Specifically, this request seeks communications that are wholly unrelated to Lender's Motion for Relief From Stay or Debtor's Plan Confirmation, as the Communications are only relevant to Lender's acquisition of the notes. Debtor has not asserted a challenge or an objection to Lender's ownership of the notes, or Lender's right to enforce the notes, and Debtor is now time barred from raising such objections.*

3.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the SBA and CRE, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender will produce all relevant, nonprivileged communication between it and SBA since Debtor's bankruptcy petition was filed .*

4.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between CRE and the Office of the United States Trustee, whether sent to or from You, for the time period of 2012 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender states that it has not had any direct Communications with the United States Trustee during the time period listed.*

1657355.4

*Lender's attorneys have communicated with the United States Trustee, but said Communications constitute attorney work-product and therefore are not discoverable.*

5.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between CRE and the City whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender states that it has not had any direct Communications with the City during the time period listed. Lender's attorneys have communicated with the City, but said communications constitute attorney work-product and therefore are not discoverable.*

6.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between CRE and any expert witness, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender will produce its expert witness files.*

7.      Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between CRE's expert witnesses and the City, whether sent to or from You or them, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Lender further objects on the grounds that Communications between expert witnesses and the City are not in the control and possession of Lender. Debtor can request such communications from the City, which is a party to this case.*

8.      Produce an accounting of all attorney fees and costs incurred by CRE in connection with the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan for the time period of January 2011 through the present. This request includes an accounting of the legal fees and costs included in CRE's proof of claim, as well as any other fees and costs CRE asserts it has incurred.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor's failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

9.      Produce all Documents that evidence the amount CRE has received in payments, reimbursements, or any other compensation in exchange for managing the Loans, including servicing the Loans, evaluating and responding to loss mitigation applications, or prosecuting of any Loan documents or guarantees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

10.     Produce all Documents that evidence the amount Sabal has received in payments, reimbursements, or any other compensation in exchange for managing the Loans, including servicing the loans, evaluating and responding to loss mitigation applications, or prosecuting of any loan documents or guarantees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claims on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

11.     Produce all Documents that evidence the amount CRE paid to the FDIC to

acquire the Colfax Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

12.    Produce all Documents that evidence the amount CRE paid to the FDIC to acquire the Broadway Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

13.    Produce all Documents that evidence the amount Oaktree paid to the FDIC to acquire its interest in CRE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

14.    Produce all Documents that evidence the way the loan-assets of CRE were evaluated and valued by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

15.     Produce all Documents evidencing any agreement between CRE and the FDIC regarding the Colfax Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

16.     Produce all Documents evidencing any agreement between CRE and the FDIC regarding the Broadway Loan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

17.     Produce any and all Documents evidencing any payment, advance or reimbursement from the FDIC to CRE under any agreement in connection with the Broadway Loan. Such request includes any payment, advance, or reimbursement for taxes, insurance, attorney fees, or other costs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

18.     Produce any and all Documents evidencing any payment, advance or reimbursement from the FDIC to CRE under any agreement in connection with the Colfax Loan. Such request includes any payment, advance, or reimbursement for taxes, insurance, attorney fees, or other costs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

*Lender objects to this request on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

19.     Produce all Documents and Communications related to the third-party agreement between FirsTier and its successors and assigns and the SBA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Lender further objects on the grounds that Communications between the FDIC and the SBA are not in the control and possession of Lender. Debtor can request such communications from the SBA, which is a party to this case.*

20.     Produce all Documents and Communications evidencing that the third-party agreement referenced the in the above paragraph has been honored or violated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Moreover, the request assumes the existence of a third-party agreement that is not defined in the request or in the broader discovery requests. Lender further objects on the grounds that Communications between the FDIC and the SBA are not*

*in the control and possession of Lender. Debtor can request such communications from the SBA, which is a party to this case.*

21.    Produce all minutes of meetings of CRE, including its board of directors or any committees, which relate to Morreale Hotels, LLC and/or Jesse Morreale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Without waiving this objection, Lender states that no such meeting minutes exist. Additionally, any such meeting minutes would be protected by attorney- client privilege.*

22.    Produce all internal Communications at CRE, including between its employees, board of directors or any committees, or parent companies, which relate to Morreale Hotels, LLC and/or Jesse Morreale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Debtor asks for any communications related to itself or Jesse Morreale and does not specify that these communications be limited in time or subject matter.*

23.    Produce a full copy of any appraisal, broker price opinion, market analysis, valuation report, or other valuation, including any updates or supplements, in your possession regarding the Broadway Property. This Request includes any such appraisals, opinions or analyses requested by FirstTier Bank, the FDIC, or CRE.

   a.   Produce any internal Communications, or Communications with third parties or experts, related to the appraisals, opinions, analyses, or valuations referenced in the above paragraph.

   b.   Produce a full copy of any overall property evaluation or property condition report, including any updates or supplements, in your possession regarding the Broadway Property. This Request includes any such evaluations, opinions or analyses requested by FirstTier Bank, the FDIC, or CRE.

   c.   Produce any environmental and/or hazardous material reports, analyses, evaluations, or studies in Your possession or control on the Broadway Property.

   d.   Produce any architectural, engineering, or other professional studies, reports, opinions in Your possession or control regarding the Broadway Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Lender also objects on the grounds that Debtor asks for numerous documents that are not in Lender's possession, including analyses, appraisals, opinions, or valuations requested by third parties. Without waiving this objection, Lender states: To the extent that Lender has such documents, Lender will disclose them in concert with its disclosure of its expert witness files and/or its Rule 26 disclosures.*

24.     Produce a full copy of any appraisal, broker price opinion, market analysis, valuation report, or other valuation, including any updates or supplements, in your possession regarding the Colfax Property. This Request includes any such appraisals, opinions or analyses requested by FirstTier Bank, the FDIC, or CRE.

    a.   Produce any internal Communications, or Communications with third parties or experts, related to the appraisals, opinions, analyses, or valuations referenced in the above paragraph.

    b.   Produce a full copy of any overall property evaluation or property condition report, including any updates or supplements, in your possession regarding the Broadway Property. This Request includes any such evaluations, opinions or analyses requested by FirstTier Bank, the FDIC, or CRE.

    c.   Produce any environmental and/or hazardous material reports, analyses, evaluations, or studies in Your possession or control on the Colfax Property.

    d.  Produce any architectural, engineering, or other professional studies, reports, opinions in Your possession or control regarding the Colfax Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome. Debtor asks for numerous documents that are not in its possession, including analyses, appraisals, opinions, or valuations requested by third parties. Without waiving this objection, Lender states: To the extent that Lender has responsive documents to this request, they will all be produced with Lender's expert disclosures.*

25.     Produce or make available for inspection, the original loan documents for the Broadway Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**:

*Lender will make these documents available for inspection and copying at its counsel's offices at: Bryan Cave LLP, 1700 Lincoln Street, Suite 4100, Denver, CO 80203.*

26.    Produce or make available for inspection, the original loan documents for the Colfax Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

*Lender will make these documents available for inspection and copying at its counsel's offices at: Bryan Cave LLP, 1700 Lincoln Street, Suite 4100, Denver, CO 80203.*

27.    Produce or make available for inspection, the original transfer or assignment of the Broadway Loan from FirstTier to the FDIC to CRE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**:

*Debtor's request is irrelevant. Without waiving this objection, Lender states: Lender will make copies of these documents available for inspection and copying at its counsel's offices at: Bryan Cave LLP, 1700 Lincoln Street, Suite 4100, Denver, CO 80203.*

28.    Produce or make available for inspection, the original transfer or assignment of the Colfax Loan from FirstTier to the FDIC to CRE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**:

*Debtor's request is irrelevant. Without waiving this objection, Lender states: Lender will make copies of these documents available for inspection and copying at its counsel's offices at: Bryan Cave LLP, 1700 Lincoln Street, Suite 4100, Denver, CO 80203.*

29.    To the extent not previously covered in these Requests for Production of Documents, produce any and all exhibits CRE intends to use at the hearing scheduled for September 16, 17 and 18, including for the pending Motion to Dismiss, Motion for Relief From Stay and Plan confirmation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**:

*Lender will produce these documents on September 9, 2013, when it files its list of Witnesses and Exhibits as required by the Court's Order.*

30.    If CRE objects to interest at the rate of 4% per annum as proposed in the Debtor's Plan for Class 3 (paragraph 6.2), produce all Documents and Communications that support CRE's position that something other than 4% interest should be applied to CRE's secured interest in the Colfax Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**:

*Debtor's request seeks information that is publicly available. To the extent that any information relied upon by Lender is not publicly available and to the extent that the subject is contained in Lender's expert files, Lender will produce these documents with its expert disclosures.*

31.    Produce any Documents, records or notes from meetings, discussions, or other Communications with Debtor or Jesse Morreale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome.  Lender also objects on the grounds that Debtor asks for Communications in its own possession.*

32.    Produce all Documents or Communications between CRE and any professional or expert retained by CRE, including, but not limited to individuals at AEI Consultants including John Snyder and Jason Grubb, and individuals at CBRE including Christopher Baker.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**:

*Lender will produce all relevant communications with any professional or expert retained by Lender related to this dispute.*

33.    Produce all Documents or Communications regarding Jesse Morreale's emails to Howard Marks and responses from Mark Jacobs at Oaktree to Jesse Morreale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33**:

*Lender objects to this request as it seeks irrelevant information, is vague, overly broad, and burdensome.  Lender further objects on the basis that Debtor is seeking communications made by and between a third-party and Debtor or Debtor's principal.  Finally Lender objects on the basis that Debtor fails to limit the request in time or scope.*

34.    Produce all Documents and Communications related in any way to any FDIC, Congressional, or Congressman Ed Perlmutter's inquiry into Oaktree/CRE/Sabal's handling of the Debtor's Loans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

*Lender objects to this request as it seeks irrelevant information, is vague, overly broad, and burdensome.  This information has no relevancy to the issues in this action wholly irrelevant information.*

35.    Produce any Documents, including organizational, operating and servicing agreements, that set forth Your policy or restrictions regarding Your loans that are secured by real property with environmental or hazardous materials issues.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**:

*Lender objects to this request on the grounds that it is irrelevant, vague, overbroad and unduly burdensome.*

36.     Produce any Documents, including organizational, operating and servicing agreements, that set forth Your policy or restrictions regarding whether You may have any ownership or membership interest whatsoever in any Borrower or Obligor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

*Lender objects to this request as it seeks irrelevant information, is vague, overly broad, and burdensome. This request is not clear as to what Debtor is seeking and therefore Lender cannot determine whether it is able to produce responsive documents.*

37.     To the extent not previously covered in these Requests for Production of Documents, produce Your entire loan file for the Broadway Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

*Lender will produce all relevant, unprivileged collateral documents kept in its loan file for the Broadway Property.*

38.     To the extent not previously covered in these Requests for Production of Documents, produce Your entire loan file for the Colfax Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

*Lender will produce all relevant, unprivileged collateral documents kept in its loan file for the Colfax Property.*

## INTERROGATORIES

1.     If CRE objects to interest at the rate of 4% per annum as proposed in the Debtor's Plan for Class 3 (paragraph 6.2), describe in detail CRE's basis for and process for determining any other interest rate it proposes should be applied to CRE's secured interest in the Colfax Property.

**RESPONSE TO INTERROGATORY NO. 1:**

*Lender does object to Debtor's 4% per annum interest rate. The basis for Lender's position that the interest should be higher is based on an analysis of the current financial markets and other similarly situated businesses in the industry as well as the current circumstances of the bankruptcy estate. In addition, this rate does not take into consideration the requisite amount of risk adjustment, which should be at a minimum of a 1-2% rate hike. In addition to these factors, Lender bases its position on expert opinions, which will be subsequently disclosed in its Rule 26 disclosures.*

2.     Identify any Person, business, government, or entity that has expressed their desire or intention to purchase or otherwise take control of the Broadway Property and/or Colfax Property at any foreclosure or other sale initiated by CRE in the past or in the future.

1657355.4

13

**RESPONSE TO INTERROGATORY NO. 2**:

*Lender objects to this interrogatory as it is irrelevant, vague, overly broad, and burdensome. Debtor's requests relates only to the value of the loans, which is not at issue in these proceedings. Moreover, Lender cannot identify every person, business, government, or entity that may have expressed an interest in the Properties nor is it possible to identify any future sales and potential interest from those future sales.*

3.      Identify any Person, business, government, or entity that has expressed their desire or intention to purchase or otherwise take over the Broadway Loan and/or Colfax Loan from CRE at any time pre or post-Petition.

**RESPONSE TO INTERROGATORY NO. 3**:

*Lender objects to this interrogatory as it is irrelevant vague, overly broad, and burdensome. Whether or not someone or some entity has expressed a desire to purchase or take over the loans from Lender does not bear any relevancy to the issues in this action.*

4.      Describe in detail Your anticipated actions if you are granted relief from the automatic stay in the Debtor's bankruptcy case, including Your intent with the Hotel Properties, anticipated use, and/or anticipated disposition.

**RESPONSE TO INTERROGATORY NO. 4**:

*Lender objects to this interrogatory as it is irrelevant. What Lender's anticipated actions are if granted relief does not bear any relevancy to the issues in these proceedings.*

5.      Describe in detail Your analyses and conclusions to reject the Debtor's proposals to resolve the Broadway Loan and Colfax Loan, including such resolution options that have been presented by the Debtor both Pre-Petition and Post-Petition.

**RESPONSE TO INTERROGATORY NO. 5**:

*Lender objects to this interrogatory as it is irrelevant, overbroad, unduly burdensome and seeks privileged information. As an initial matter, Debtor fails to identify what proposals, if any, it is referring to. Moreover, any analyses and conclusions regarding an offer to "resolve" or settle the loans on the Properties are subject to protection under FRE 408.*

6.      Identify any and all individuals at CRE that have participated in any way in the processing, servicing, analyzing or considering the Debtor's Loans.

**RESPONSE TO INTERROGATORY NO. 6:**

- *John Calder*

- *Nathan Sino*

7.     Describe in detail what loss mitigation options you offer to delinquent borrowers, and how you provide information to these borrowers about those options.

**RESPONSE TO INTERROGATORY NO. 7:**

*Lender objects to this interrogatory as irrelevant and overly broad.  As an initial matter, Lender treats each borrower on a case-by-case basis and therefore cannot identify loss mitigation options that generally offers.  Nonetheless, this request bears no relevancy on this issues in this action.*

8.     Describe in detail how You evaluate borrowers' applications for any available loss mitigation options.

**RESPONSE TO INTERROGATORY NO. 8:**

*Lender objects to this interrogatory as irrelevant and overly broad.  As an initial matter, Lender treats each borrower on a case-by-case basis and therefore cannot identify its evaluation process for each borrower as it adjusts to the unique circumstances of each case..  Nonetheless, this request bears no relevancy on this issues in this action.*

9.     Describe what procedures you have in place to ensure that complete loss mitigation applications are reasonably and fairly evaluated before proceeding with a foreclosure action.

**RESPONSE TO INTERROGATORY NO. 9:**

*Lender objects to this interrogatory as it is irrelevant.  Moreover, Lender has no legal obligation to ensure complete loss mitigation.  Nevertheless, Lender states that each case manager individually evaluates the proposed workout prior to proceeding with any foreclosure action.*

10.     Describe in detail all consumer and customer complaints and regulatory and enforcement inquiries, investigations, and actions related to Your management policies and procedures surrounding your servicing and actions with respect to 1) Debtor's Loans, 2) any loans that were part of the FirsTier portfolio, and 3) any loans under your management as a result of an FDIC Structured Transaction Sale.

**RESPONSE TO INTERROGATORY NO. 10:**

*Lender objects to this interrogatory as it is irrelevant, overly broad, and unduly burdensome.  Any complaints, inquiries, investigations or actions related to any other loans other than those owed by Debtor to Lender bear no relevancy here and seeks information beyond the scope of this action.  Similarly, whether or not there have been any complaints, inquiries, investigations or actions as to Debtor's Loans also bears no relevancy as the proceedings.*

11.     Describe in detail all consumer and customer complaints and regulatory and enforcement inquiries and actions related to any of your practices relating to (1)

1657355.4

15

filing of foreclosure documents without, for example, proper affidavits or notarizations; (2) failing to always ensure that loan documents were properly endorsed or assigned and, if necessary, in the possession of the original documents and/or appropriate party at the appropriate time; (3) failing to devote sufficient financial, staffing, and managerial resources to ensure proper administration of foreclosure processes; (4) failing to devote adequate oversight, internal controls, policies and procedures, compliance risk management, internal audit, third party management, and training to foreclosure processes; and (5) failing to sufficiently oversee outside counsel and other third-party providers handling of foreclosure-related services.

### RESPONSE TO INTERROGATORY NO. 11:

*Lender objects to this interrogatory as it is irrelevant, overly broad, and unduly burdensome. Any complaints, inquiries, or actions related to Lender's practices bears no relevancy to this proceeding. Debtor is on a fishing expedition seeking information that will have no effect on the outcome of this proceeding and bears no relevancies to the issues at hand.*

12.    Identify Your actual monetary investment in the Debtor's Loans.

### RESPONSE TO INTERROGATORY NO. 12:

*Lender objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

13.    Identify the dollar amount value/basis that You placed on the Broadway Loan at the time you purchased the Broadway Loan from the FDIC, and the basis of how You determined that value.

### RESPONSE TO INTERROGATORY NO. 13:

*Lender objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's Claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

1657355.4

14.     Identify the dollar amount value/basis that You placed on the Colfax Loan at the time you purchased the Broadway Loan from the FDIC, and the basis of how You determined that value.

**RESPONSE TO INTERROGATORY NO. 14**:

*Lender objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proof s of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

15.     If You have changed the value/basis You placed on the Broadway Loan since the time you purchased the Broadway Loan from the FDIC, please identify such values and the basis for changing the value.

**RESPONSE TO INTERROGATORY NO. 15**:

*Lender objects to this interrogatory n the grounds that it is overbroad and unduly burdensome and because it relates solely to the value of Lender's claims against Debtor, which is not a relevant issue any longer. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid. Had Debtor wanted to object to validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim, which it did not. This failure precludes Debtor from now trying to resurrect the issue well after the deadline for objection has passed. Therefore, Debtor's request seeks irrelevant information.*

16.     If You have changed the value/basis You placed on the Colfax Loan since the time you purchased the Colfax Loan from the FDIC, please identify such values and the basis for changing the value.

**RESPONSE TO INTERROGATORY NO. 16**:

*Lender objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

1657355.4

17.     Describe in detail how the value of the FirstTier loan portfolio overall is applied to the value of each individual loan in your internal accounting records.

**RESPONSE TO INTERROGATORY NO. 17**:

*Lender objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Additionally, this request relates solely to the value of Lender's claims against Debtor, any challenge to which is time barred. On April 29, 2013, Lender timely filed its Proofs of Claim on both the Broadway and Colfax Properties. Debtor failed to timely object to Lender's claims and therefore Lender's total claims against Debtor are valid and prima facia evidence. Had Debtor sought to object to the validity of Lender's claims, it should have timely objected to Lender's Proofs of Claim. Debtor failure to assert a timely objection bars Debtor from resurrecting the issue after the deadline for objection has passed. Therefore, Debtor's request is irrelevant.*

18.     With respect to the Broadway Property, are you aware of any property evaluations, appraisals, analyses, opinions, reports, environmental studies, or hazardous materials reports that are not in your possession or that were never reduced to writing?

**RESPONSE TO INTERROGATORY NO. 18**:

*No.*

19.     If you answered yes to the question directly above, identify any such property evaluations, appraisals, analyses, opinions, reports, environmental studies, or hazardous materials reports that are not in your possession or that were never reduced to writing.

**RESPONSE TO INTERROGATORY NO. 19**:

*N/A.*

20.     With respect to the Colfax Property, are you aware of any property evaluations, appraisals, analyses, opinions, reports, environmental studies, or hazardous materials reports that are not in your possession or that were never reduced to writing?

**RESPONSE TO INTERROGATORY NO. 20**:

*No.*

21.     If you answered yes to the question directly above, identify any such property evaluations, appraisals, analyses, opinions, reports, environmental studies, or hazardous materials reports that are not in your possession or that were never reduced to writing.

**RESPONSE TO INTERROGATORY NO. 21**:

*N/A.*

22.     Identify the basis for why You believe the Debtor's Chapter 11 Plan of Reorganization is not confirmable under 11 U.S.C. § 1129.

**RESPONSE TO INTERROGATORY NO. 22**:

*Lender's basis for its opposition to Debtor's Plan of Reorganization is set forth in its Motion for Relief from Stay [Docket # 120]. In addition, the basis for its opinion will also be set forth in its Objection to Debtor's Plan for Reorganization which will be filed on September 9th, 2013 pursuant to the Court's Order.*

23.     Describe in detail your specific basis and support for alleging that "The Hypothetical $700,000 Investment in Debtor Cannot and Will Not Occur," including that "Debtor's principal cannot make it." (Motion for Relief From Stay (page 13 of 103), Docket No. 120).

**RESPONSE TO INTERROGATORY NO. 23**:

*At the time of this statement, Debtor had not identified any source as to where this alleged $700,00 investment would come from. Nor does Debtor control any equity that it could offer as collateral for such an investment. Additionally, Debtor's principal is involved in litigation with the Lender, where Debtor's principal is likely to have a substantial judgment entered against him. Each of these factors indicated to Lender that such an investment was highly improbable.*

24.     Identify all Persons at the FDIC who were involved in the purported transfer of the Loans to You, including any Person involved in any negotiations Related To any agreement regarding the purchase and transfer of the Loans.

**RESPONSE TO INTERROGATORY NO. 24**:

*Lender objects to this interrogatory on the grounds that it is irrelevant, overbroad and unduly burdensome. It is well established that loans may be assigned from one creditor to another without any impairment to the ability to enforce the terms of loan. Again, Debtor is on a fishing expedition for irrelevant information in order to distract the Court from the issues necessary to actually resolve this action.*

25.     Identify all Persons at CRE who were involved in the purported transfer of the Debtor's Loans, including any Person involved in any negotiations Related To any agreement with the FDIC.

**RESPONSE TO INTERROGATORY NO. 25**:

*Lender objects to this interrogatory on the grounds that it is irrelevant, overbroad and unduly burdensome. It is well established that loans may be assigned from one creditor to another without any impairment to the ability to enforce the terms of loan. Again, Debtor is on a fishing expedition for irrelevant information in order to distract the Court from the issues necessary to actually resolve this action.*

1657355.4

## REQUESTS FOR ADMISSIONS

1.      Admit that pursuant to Your Operating Agreement and any amendments thereto, You cannot (A) be or become a partner or joint venturer with any Borrower or Obligor, (B) be or become an agent of any Borrower or Obligor, or allow any Borrower or Obligor to be an agent of such Servicer or any Subservicer or of any Affiliate of the Servicer or any Subservicer, or (C) have any interest whatsoever in any Borrower or Obligor.

**RESPONSE TO ADMISSION NO. 1**:

*Lender objects to this request on the grounds that it is irrelevant and that it seeks a legal conclusion.*

2.      Admit that You have made no proposals or offers to the Debtor for loss mitigation, including resolution of the Loans via a reduced payoff, loan modification, or restructuring of the Loans.

**RESPONSE TO ADMISSION NO. 2**:

*Lender objects to this request as it seeks information that is protected under FRE 408. Moreover, Lender has no legal duty to engage in "loss mitigation" and therefore this request is irrelevant.*

3.      Admit that You have either rejected or not responded to any proposals or offers the Debtor has made to You for loss mitigation, including resolution of the Loans via a reduced payoff, loan modification, or restructuring of the Loans.

**RESPONSE TO ADMISSION NO. 3**:

*Lender objects to this request as it seeks information that is protected under FRE 408. Moreover, Lender has no legal duty to engage in "loss mitigation" and therefore this request is irrelevant.*

DATED this 3rd day of September, 2013.

By: */s/ Craig Schuenemann*
Craig K. Schuenemann
BRYAN CAVE HRO
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone:  303-861-7000
Facsimile:  303-866-0200
E-mail:  craig.schuenemann@bryancave.com
*Attorneys for 2011-SIP-1 CRE/CADC*
*Venture, LLC*

1657355.4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of September, 2013, a true and correct copy of the foregoing **2011-SIP-1 CRE/CADC VENTURE, LLC'S RESPONSES TO DEBTOR'S FIRST SET OF WRITTEN DISCOVERY** was served by email and U.S. Mail, postage pre-paid, upon the parties listed on the attached mailing matrix.

Lee M. Kutner
Kutner Brinen Garber, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203

/s/ Linda Schuch_____
Linda Schuch

1657355.4

21

**Leigh Flanagan**

| | |
|---|---|
| **From:** | Schuenemann, Craig <Craig.Schuenemann@bryancave.com> |
| **Sent:** | Tuesday, September 03, 2013 8:59 PM |
| **To:** | Lee Kutner; Leigh Flanagan |
| **Subject:** | Morreale - Responses to First Set of Written Discovery |
| **Attachments:** | Morreale - Responses to First Set of Written Discovery-v4.DOC |

Lee and Leigh,

Attached are SIP's responses and objections to Debtor's First Set of Written Discovery. We are loading document files onto a disc that we will forward as soon as possible. I will also forward a declaration from the client supporting the responses.

Please let me know if you have questions.

Craig

**Craig Schuenemann**
Bryan Cave LLP
1700 Lincoln St., Suite 4100
Denver, Colorado 80203
303.866.0678 [direct]
720.470.0945 [mobile]
craig.schuenemann@bryancave.com



---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

**EXHIBIT B**